### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE PICKETT, : | |
|    *Plaintiff*, : | |
| : | |
| v. : | CIVIL ACTION NO. 23-CV-1411 |
| : | |
| SGT J WILLIAMS, *et al.* : | |
|    *Defendants*. : | |

### MEMORANDUM

**PAPPERT, J.**                                                                                                                                 April 20, 2023

      George Pickett, a convicted inmate housed at SCI Chester, filed a *pro se* Complaint alleging constitutional claims against six SCI Chester officials and a Pennsylvania State Trooper. Each Defendant is named in his or her official as well as individual capacity. Pickett also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Pickett leave to proceed *in forma pauperis* and dismiss the Complaint.

### I[1]

      Pickett asserts that on January 30, 2023 while using the toilet in his cell, Defendant Sgt. Williams opened his cell door and walked in while he was naked from the waist down. (Compl. at 8.) Williams allegedly looked at Pickett's penis and said, "I like that" and then said, "Look at what I found," while holding his cell door open for the entire block to see Pickett. (*Id.*) Williams began to enter the cell and question Pickett about who had been in his cell, what he was doing, and about a smell. (*Id.*) Pickett allegedly screamed and Williams continued to look at his penis. (*Id.*) Pickett felt

---

[1] The facts set forth in this Memorandum are taken from the Complaint (ECF No. 2). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

scared did not know what to do as Williams laughed at him and said, "I'll be back later." (*Id.*) After he left, Pickett went to Defendant T. Hopkins, who was the housing unit officer to ask her to call a shift supervisor. (*Id.*) Pickett told her that he was sexually assaulted and asked Hopkins for a form to report it under the Prison Rape Elimination Act ("PREA"). Hopkins told Pickett to call the PREA hotline number, but when he tried the hotline number did not work. (*Id.*) He went back to Hopkins to tell her that and again asked for a shift supervisor, but Hopkins allegedly laughed at him and told him to get out of her face. (*Id.*) At some point thereafter, Hopkins called Pickett back to her desk and said that Defendant Lt. J.D. White would be there in twenty minutes. (*Id.*) Later that night, Hopkins walked past Pickett's cell and laughed at him, causing him to feel anguish and humiliation. (*Id.*)

The next day, Pickett met with Defendant Ms. Liberman, a PREA counselor, who took a statement from him. (*Id.* at 9.) She allegedly tried to persuade Pickett not to pursue the matter. (*Id.*) He later that day met with Defendant Ms. McCoy, a "psych doctor," who also took a statement. (*Id.*) She also allegedly tried to dissuade Pickett from reporting the incident. (*Id.*) Liberman allegedly ignored his request for mental health services and McCoy, who apparently met Pickett to deal with his mental health issues the same day, "started talking about other issues such as my family and events," rather than the incident with Sgt. Williams. (*Id.*) Pickett met with Lt. White later in that week, but White interrupted their meeting to deal with other matters, sending Pickett out into the hall and then to the medical unit to wait. (*Id.*) Pickett learned that White left for the day without completing their session. (*Id.*)

One week later, Pickett met with Defendant State Trooper Hanoser who, after first asking Pickett if he could read, write and do math, took a statement from him. (*Id.* at 10.) Pickett alleges that the preliminary questions were "out of control and totally uncalled for," and Hanoser shamed him about the PREA incident and tried to make Pickett think it was his own fault. (*Id.*) Defendant CCPM Bourn, while first ignoring Pickett's request slips, spoke with him in a hallway but told Pickett to go away and did not have time for him. (*Id.*) Pickett asserts that all named Defendants "made comments that in some way or form this issue is on me and I'm the blame for it." (*Id.*) He asserts that Williams "violated me," Hopkins, Liberman, and McCoy failed to help him, Trooper Hanoser and Lt. White shamed him, and Bourn ignored him. (*Id.*) Pickett asserts constitutional claims and seeks money damages. He also seeks a declaration that all Defendants have violated his rights, that he be provided with outside mental health counseling and that there be no retaliation against him in terms of his parole/probation for having brought his claims. (Id. at 7, 10.)

II

As Pickett appears to be incapable of paying the filing fees to commence this action, the Court will grant him leave to proceed *in forma pauperis*.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the

---

[2] Because Pickett is a prisoner, he must pay the $350 filing fee in installments as required by the Prison Litigation Reform Act.

3

litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Pickett is proceeding *pro se*, the Court construes the allegations of the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245).

### III

### A

In drafting his Complaint, Pickett checked the boxes on the form he used indicating that he seeks to name the Defendants in their individual and official capacities. Pickett appears not to have understood the implication of checking the official capacity box. While it is unclear whether all of the named Defendants are employed by the Commonwealth of Pennsylvania at SCI Chester and the Pennsylvania State Police or, in the case of Defendant McCoy, by a private entity contractor that provides medical services at SCI Chester, the official capacity claims are not plausible.

To the extent any official capacity claim for money damages is asserted against an employee of the Commonwealth at SCI Chester and the Pennsylvania State Police, the Eleventh Amendment bars suits seeking money damages against a state and its

4

agencies in federal court.³  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.⁴  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  Thus, all official capacity claims for money damages against Commonwealth employees will be dismissed with prejudice.

To the extent that claims for money damages are asserted against employees of the contract provider of medical services in their "official capacities," such claims are not cognizable because that contract provider is a private entity.  *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit") (citing *Owens v. Connections Cmty. Support Programs, Inc.,* 840 F.Supp.2d 791, 796 (D. Del. 2012) ("Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private

---

³ However, state officials may be sued in their official capacities where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law.  *See Ex parte Young,* 209 U.S. 123 (1908); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).  Pickett's request for prospective injunctive relief will be discussed separately.

⁴ However, state officials sued in their individual capacities are "persons" within the meaning of Section 1983.  *See Hafer*, 502 U.S. at 31 [full cite here].  Thus, the Eleventh Amendment does not bar suits for monetary damages brought under Section 1983 against state officials in their individual capacities.  *Id.*

parties where the entity is also susceptible to suit.")).  Even if official capacity suits against individuals who work for private companies are cognizable, the suit would, in effect, be one against the company for whom that individual works.  *See Kentucky v. Graham,* 473 U.S. 159, 105 (1985).  Since Pickett has not attempted to name that entity, any official capacity claims against employees of the medical services contractor at SCI Chester are dismissed.  *Accord Burk v. West*, No. 21-4968, 2021 WL 5758945, at *2 (E.D. Pa. Nov. 24, 2021) (holding that official capacity claims against employees of private employer were not cognizable because they are essentially claims against their private employer).

B

Pickett seeks a declaration that all Defendants have violated his rights. Declaratory relief is unavailable to adjudicate past conduct, so Pickett's request is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").  Thus, the claim for declaratory relief is dismissed.

6

C

To the extent Pickett seeks to assert a claim for violation of the PREA, any such claim must be dismissed. "While the PREA was intended in part to increase the accountability of prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action." *See Walsh v. N.J. Dep't of Corr.*, No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017); *see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (noting that "other courts addressing this issue have found that the PREA does not establish a private cause of action"); *Frederick v. Snyder Cnty. Prison*, No. 18-707, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22, 2019) (same). Thus, Pickett cannot "bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the [institution's] PREA policy via section 1983." *See Bowens v. Emps. Of the Dep't of Corr.*, No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), *aff'd, Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017). Accordingly, any claims premised upon violations of the PREA must be dismissed as a matter of law.

Moreover, to the extent Pickett challenges the quality of the investigation into his PREA allegations, or claims that officials did not take his claim seriously, he has no freestanding right to such an investigation. *See Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (stating that "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim."). Thus, his allegations against Defendant Hopkins, Lt. White, Ms. Liberman, Ms. McCoy,

Trooper Hanoser, and CCPM Bourn for ignoring or failing to investigate his PREA claim are not plausible.

D

Pickett asserts constitutional claims against all Defendants.[5] The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

1

Pickett asserts that Defendant Williams opened his cell door, watched him use the toilet while he was naked from the waist down, looked at his penis and held the cell door open so others on the block could see Pickett. These allegations fail to allege a plausible constitutional violation. *See Bracey v. Price*, No. 09-1662, 2012 WL 6015727, at *17 (W.D. Pa. Dec. 3, 2012) ("Occasional viewing of inmates while showering or using toilet facilities has been held to be appropriately within the parameters of maintaining institutional security and therefore, constitutional."); *Williams v. Ann Klein Forensic Ctr.*, No. 18-9606, 2020 WL 614657, at *3 (D.N.J. Feb. 10, 2020) ("In the context of allegations regarding viewing plaintiff on the toilet, courts typically look to whether incident(s) were regular/frequent and how close the viewing was in determining

---

[5] While Pickett cites the First, Second, Third, Fourteenth and Eighth Amendments as the basis of his claims (Compl. at 3, 6), the Court can discern no plausible claim for a violation of the Second or Third Amendments. A possible First Amendment retaliation claim will be discussed separately. Also, as a convicted prisoner Pickett's claims are properly analyzed under the Eight Amendment, rather than the due process clause of the Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

whether a plaintiff has stated a Fourth Amendment constitutional claim."). While unpleasant, the lack of privacy to use the toilet is a normal aspect of prison life with which a convicted person must abide. *Rhodes v. Chapman*, 452 U.S. 337 (1981) ("to the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). Thus, any constitutional invasion of privacy claim is dismissed with prejudice.

2

Sexual abuse and harassment, however, violate an inmate's rights under the Eighth Amendment, which prohibits cruel and unusual punishment. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) ("Whether sexual abuse of inmates by prison officials offends the Eighth Amendment is a matter of first impression in our Court. Today, we join numerous sister Circuits in holding that prison sexual abuse can violate the Constitution."). Claims for sexual abuse and harassment are evaluated similarly to excessive force claims in that the prisoner must allege facts plausibly establishing both an objective and a subjective component. *Id.* at 475 (stating that the misconduct "must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind"). Regarding the subjective component, the Court "consider[s] whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm." *Id.* at 475 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Regarding the objective prong, the Court considers whether the action is "repugnant to the conscience of mankind" or whether it is "sufficiently serious or severe." *Id.* at 475-76 (citations omitted).

However, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 475 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

An Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator. *Ricks*, 891 F.3d at 471 ("Our society requires prisoners to give up their liberty, but that surrender does not encompass the basic right to be free from severe unwanted sexual *contact*.") (emphasis added); *Williams v. Wetzel*, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eight Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); *McCain v. Wetzel*, No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (stating that "sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation"); *Washington v. Gilmore*, No. 15-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017) (dismissing Eighth Amendment sexual assault claim where plaintiff did not allege any "direct physical contact" with the alleged perpetrators). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." *McCain*, 2018 WL 1211507, at *3 (citing *Manon v. Garrison*, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)). Pickett alleges only that Williams looked at him and made verbal comments. Because he does not allege any sexual contact by Williams, his Eighth Amendment claim based on sexual harassment is not plausible and will be dismissed with prejudice.

3

Pickett alleges that Defendant Liberman ignored his request for mental health services and Defendant McCoy, who apparently met Pickett to deal with his mental

health issues, talked about other issues rather than the incident with Sgt. Williams. To state a constitutional claim under the Eighth Amendment based on the failure to provide medical treatment, a convicted prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Construing Pickett's allegations liberally, and assuming that Pickett's mental health issues constitute a serious medical need, any claim against Defendant Liberman, the prison PREA coordinator is not plausible. "If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Pickett states that Liberman ignored his issue, but also asserts he met with Defendant McCoy, the "psych doctor," the same day he met with Liberman. Because he received mental health services from McCoy, the allegation that Liberman failed to help him does not allege a plausible claim that she refused, delayed or prevented him from receiving mental health services.

Any claim against McCoy is also not plausible. Pickett alleges only that McCoy asked him about other problems he might have been experiencing, rather than focusing on the alleged sexual harassment he experienced. His assertion that McCoy failed to help him is conclusory, alleges only that Pickett disagreed with the manner in which McCoy sought to treat his problem, and fails to plausibly allege that McCoy refused, delayed or prevented Pickett from receiving mental health services. For these reasons,

Pickett's claims based on deliberate indifference to a serious medical need will be dismissed with prejudice.

4

Pickett seeks prospective injunctive relief in the form of an order prohibiting the Defendants from retaliating against him for filing this lawsuit, and to provide him with outside mental health services. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019). "The first two factors are prerequisites for a movant to prevail." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999). The standard for permanent injunctive relief is the same, except that the moving party must show actual success, instead of probable success, on the merits. *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 546 n. 12 (1987). Because the Court determines on statutory screening that none of Pickett's claims are plausible, he has failed to establish the "success on the merits" element in order to grant injunctive relief.

To the extent that Pickett's use of the word "retaliation" may be an attempt to bring a substantive claim, this too is not plausible. In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). A prisoner's filing of a lawsuit or grievance constitutes constitutionally protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). However, Pickett does not allege that he has suffered an adverse action. Because his belief that he may suffer an adverse action in the future is entirely speculative, the claim must be dismissed with prejudice.

### IV

For the foregoing reasons, the Court will dismiss Pickett's Complaint with prejudice.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**